# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MARY ALEXANDER,

    Plaintiff,

v.

AURORA LOAN SERVICES, a foreign limited liability company; and CHRISTOPHER HOBSON, INC., a California Corporation qualified to do business in Nevada, d/b/a Franklin Financial and DOES I-V and ROES VI-X.

    Defendants.

Case No. 2:09-CV-1790-KJD-LRL

**ORDER**

Presently before the Court is Defendant Aurora Loan Services' ("Aurora") Motion to Dismiss (#6). Plaintiff filed a response in Opposition (#10) to which Aurora replied (#13). Defendant Franklin Financial ("Franklin") filed a Joinder in Motion and Motion to Dismiss (#11) to which Plaintiff filed a supplement in Opposition (#12). Also before the Court is Plaintiff's Motion for Preliminary Injunction (#14). Franklin filed a response in Opposition (#15) to which Plaintiff replied (#17).

**I. Background**

Plaintiff Mary Alexander purchased real property located at 1090 Bootspur Drive, Henderson, Nevada on or about April 12, 2006, for $374,900. To finance the purchase of the property, Plaintiff

obtained a mortgage loan ("the Loan") in the amount of $352,000 from Franklin. Plaintiff signed a promissory note and executed a deed of trust to secure the Loan.

After Plaintiff's attempts with Aurora to modify the terms of the Loan failed, Plaintiff notified Aurora and Franklin on or about May 27, 2009, that she was rescinding the Loan and thereafter stopped making payments in or around July 2009. As a result of Plaintiff's default on the Loan, non-judicial foreclosure proceedings commenced, including the recording of a Notice of Breach and Default and Election to Cause Sale of Real Property on November 13, 2009.

On August 11, 2009, Plaintiff filed the present Complaint in Nevada state court seeking compensatory damages, injunctive relief, attorney's fees, and costs. On September 9, 2009, Aurora removed this case on the basis of diversity and federal question jurisdiction and moved to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. On November 13, 2009, Franklin also filed a motion to dismiss. Subsequently, on February 2, 2010, Plaintiff filed the present Motion for Preliminary Injunction.

**II. Standard for Motion to Dismiss**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit Partnership v. Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Consequently, there is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff has pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The Iqbal evaluation illustrates a two prong analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations

which are legal conclusions, bare assertions, or merely conclusory. Id. at 1949-51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. If the allegations state plausible claims for relief, such claims survive the motion to dismiss. Id. at 1950.

**III. Motion to Dismiss Analysis**

Plaintiff asserts seven causes of action in her Complaint against Defendants: (1) deceptive trade practices; (2) unfair lending practices under state statute; (3) breach of contract and failure to act in good faith; (4) violations of TILA; (5) preliminary and permanent injunctive relief; (6) declaratory relief that Plaintiff was given an unfair loan that should be rescinded and declared as null and void; and (7) breach of the implied covenant of good faith and fair dealing. Defendants have moved to dismiss each cause of action.[1]

A. Deceptive Trade Practices

Defendants have moved to dismiss Plaintiff's claim under Nevada's Deceptive Trade Practices Act, N.R.S. § 598, asserting that Plaintiff cannot state a claim under the Act, since it applies to goods and services and not real estate loan transactions. The Court agrees.

N.R.S. § 598.0923(3), the provision upon which Plaintiff bases her claim, provides that "[a] person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly . . . [v]iolates a state or federal statute or regulation *relating to the sale or lease of goods or services*." N.R.S. § 598.0923(3)(2009)(emphasis added). Here, Plaintiff's claim deals with the sale or lease of real property, not goods or services; therefore, this statute does not provide an avenue for relief to Plaintiff. The Nevada legislature adopted a separate statute dedicated solely to

---

1. The Court will examine Plaintiff's fifth cause of action for preliminary and permanent injunctive relief separately in the section dealing with Plaintiff's Motion for Preliminary Injunction. See infra p.7. Also, the Court will examine Plaintiff's seventh cause of action for breach of the implied covenant of good faith and fair dealing in conjunction with Plaintiff's third cause of action for breach of contract and failure to act in good faith. See infra p. 5.

lending practices, further supporting the statutory construction that real estate transactions are not covered under N.R.S. § 598.0923(3).  See generally N.R.S. § 598D (2003).  Accordingly, the Court dismisses Plaintiff's claim arising under Nevada's Deceptive Trade Practices Act.

B. Unfair Lending Practices

Defendants have moved to dismiss Plaintiff's claim arising under Nevada's Unfair Lending Practices Act, N.R.S. § 598D, *et. seq.*, asserting that she cannot state a claim under the Act, because the Loan does not meet the definition of a home loan.  The Court finds that the Loan does not meet the definition of "home loan" under the applicable code sections.

N.R.S. § 598D.100(1)(b) of the 2003 Unfair Lending Practices Act, in effect at the time of the Loan, provided in relevant part:

> It is an unfair lending practice for a lender to . . . [k]nowingly make a home loan to a borrower based solely upon the equity of the borrower in the home property and without determining that the borrower has the ability to repay the home loan from other assets, including, without limitation, income.

The 2003 Act defined a "home loan" as a "consumer credit transaction" that (1) "is secured by a mortgage loan which involves real property located within [Nevada]" and (2) "[c]onstitutes a mortgage under §152 of the Home Ownership and Equity Protection Act of 1994 [("HOEPA")]" and the regulations pursuant to HOEPA, including 12 C.F.R. §226.32.  See N.R.S. § 598D.040 (2005).

Section 152 of HOEPA defines a mortgage as "[a] consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction . . ."  15 U.S.C. § 1602 (aa)(1).  A "residential mortgage transaction" is "a transaction in which a mortgage, deed of trust . . . or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."  15 U.S.C. § 1602 (w).

In this action, Plaintiff's loan is a "residential mortgage transaction" and, therefore, is not protected by the Unfair Lending Practices Act.  Id.  Plaintiff correctly asserts that the 2007 amendments changed the definition of "home loan."  (See Dkt. #2, Compl. 5)  However, such amendments did not become effective until October 1, 2007, approximately a year and one-half after

4

Plaintiff secured the Loan. In Nevada, unless the legislature clearly expresses that a law should apply retroactively, the statute will only apply prospectively. See Valdez v. Employers Ins. Co., 162 P.3d 148, 154 (Nev. 2007)(*en banc*). The 2007 amendments contain no express retroactivity language. Therefore, since the Loan did not meet the applicable definitions when it was consummated in April 2006, the Court dismisses Plaintiff's claim arising under the Nevada Unfair Lending Practices Act.

### C. Breach of Contract and Failure to Act in Good Faith

In order for Plaintiff to sustain a claim for breach of contract, she must show (1) the existence of a valid contract, (2) a breach by defendant, and (3) damage as a result of the breach. See Saini v. Int'l Game Tech., 434 F. Supp.2d 913, 919-20 (D. Nev. 2006)(citing Richardson v. Jones, 1 Nev. 404, 405 (Nev. 1865)). Additionally, under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." A.C. Shaw Constr. v. Washoe County, 784 P.2d 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205). "[W]hen one party performs a contract in a manner that is unfaithful to the purpose of the contract . . . damages may be awarded against the party who does not act in good faith." Hilton Hotels v. Butch Lewis Prods., 808 P.2d 919, 923 (Nev. 1991).

Here, Plaintiff's claim fails because she does not allege facts indicating that Defendants were "unfaithful to the purpose of the contract." See Hilton Hotels, 808 P.2d at 932. Instead of asserting that Defendants violated the terms of the Loan, Plaintiff's complaint merely alleges that Defendants failed to disclose information regarding the Loan and were unwilling to negotiate acceptable terms. Furthermore, even assuming these allegations were true, they occurred *before* the contract was entered into and a party cannot breach the covenant of good faith and fair dealing before a contract is formed. See Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 941 (2d Cir. 1998) ("an implied covenant relates only to the performance of obligations under an extant contract, and not to any pre-contract conduct"). Plaintiff's sole allegation regarding conduct after the contract was formed is that Defendants refused to renegotiate the terms of the Loan. Defendants, however, were not required to alter the terms of the Loan.

5

Furthermore, Plaintiff's claim fails because the remedies she seeks under N.R.S. § 104.9625 apply to secured transactions, not real estate transactions. See N.R.S. § 104.9109 (4)(k)(2005)(noting that "[t]his article does not apply to . . . the creation or transfer of an interest in or lien on real property . . ."). Therefore, the Court dismisses Plaintiff's claim for breach of contract and failure to act in good faith. Plaintiff further claims Defendants breached the implied covenant of good faith and fair dealing by not providing market loans to her and by failing to modify the Loan. For the reasons previously given in this section, the Court dismisses this claim also.

### D. Violations of TILA

Plaintiff claims that Defendants failed to provide her with timely written disclosures of financing terms. Defendants have moved to dismiss Plaintiff's TILA claim, asserting that it is barred by the statute of limitations. The Court finds that Plaintiff's TILA claim is time-barred.

TILA provides a one-year statute of limitations period for claims for civil damages and a three-year period for recission. See 15 U.S.C. § 1640(e); 1635(a) and (f). The statute of limitations begins to run from the date of closing on the transaction. See King v. California, 784 F.2d 910, 915 (9th Cir. 1986). However, under King, equitable tolling is available to stay the statute of limitations if Plaintiff has been prevented from discovering any potential claims for fraud against Defendants. See id.

Here, the Loan closed on or about April 6, 2006. Thus, a claim for damages should have been made no later than April 6, 2007. Rescission should have occurred no later than April 6, 2009. Plaintiff filed this action on August 11, 2009 and claims to have notified the lender of her action rescinding the Loan on or about May 27, 2009, both dates well after the applicable statute of limitations. Additionally, Plaintiff cannot seek rescission under § 1635 because the statute expressly states that these provisions do not apply to "residential mortgage transactions." A residential mortgage transaction is defined in 15 U.S.C. § 1602(w) as a "transaction in which a mortgage . . . interest is created or retained against the consumer's principal dwelling." See also 12 C.F.R. § 226.2(a)(24). Finally, equitable tolling would not stay the statute of limitations here because Plaintiff

has not adequately alleged facts showing that she was prevented from discovering this claim earlier.[2] Accordingly, the Court dismisses Plaintiff's claim for violation of TILA.

### E. Declaratory Relief

"The court may . . . render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would . . . terminate the uncertainty or controversy giving rise to the proceeding." N.R.S. § 30.080 (2009). Moreover, the [declaratory judgment] may be either affirmative or negative in form and effect. See N.R.S. § 30.030 (2009). However, in this action a declaratory judgment is not appropriate because there is no "uncertainty or controversy giving rise to the proceeding" to "terminate." N.R.S. § 30.080 (2009). All of Plaintiff's claims have thus far been dismissed, therefore the Court cannot grant declaratory relief based on Plaintiff's failed claims. Furthermore, while Plaintiff seeks a declaration from the Court that she was given an unfair loan that should be rescinded, it has already been shown that rescission is no longer available and Plaintiff voluntarily agreed to the "unfair" Loan. (See Dkt. #2, Compl.¶ 12-22)

### IV. Motion for Preliminary Injunction Analysis

Also before the Court is Plaintiff's Motion for Preliminary Injunction (#14). "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quotations and citations omitted). A preliminary injunction is appropriate where a plaintiff demonstrates "either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [his] favor." Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003) (quoting Walczak v. EPL Prolong, Inc., 198 F.3d 725, 731 (9th Cir. 1999)).

---

2. Even if true that Aurora and Franklin worked together in the origination of the Loan, the equitable tolling requirements have still not been satisfied since Plaintiff fails to allege specific facts showing that she was prevented from discovering potential claims for fraud.

1  A district court must also consider whether the public interest favors issuance of the
2  injunction.  See Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1400 (9th Cir. 1992); see also,
3  Chisom v. Roemer, 853 F.2d 1186, 1189 (5th Cir. 1988).  This alternative test for injunctive relief
4  has also been formulated as follows: a plaintiff is required to establish "(1) a strong likelihood of
5  success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not
6  granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest
7  (in certain cases)."  Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995)
8  (internal quotation marks omitted).  This analysis creates a continuum: the less certain a district court
9  is of the likelihood of success on the merits, the more plaintiffs must convince the district court that
10 the public interest and balance of hardships tip in their favor.  See Fund for Animals, Inc., 962 F.2d at
11 1400.

12  More specifically, the Ninth Circuit has described the relationship between success on the
13 merits and irreparable harm as "a sliding scale in which the required degree of irreparable harm
14 increases as the probability of success decreases."  Prudential Real Estate Affiliates, Inc. v. PPR
15 Realty, Inc., 204 F.3d 867, 874 (9th Cir. 2000).  To reach this sliding scale analysis, however, a
16 moving party must, at an "irreducible minimum," demonstrate some chance of success on the merits.
17 Arcamuzi v. Cont'l Air Lines, Inc., 819 F.2d 935, 937 (9th Cir.1987).

18  Here, Plaintiff's complaint is subject to dismissal.  Specifically, Plaintiff's strongest claims
19 under the Nevada Unfair Lending Practices Act must be dismissed, because the amendment to the
20 Act does not retroactively apply to the Loan at issue in this case.  Accordingly, Plaintiff's Motion for
21 Preliminary Injunction is denied.

22 **V. Conclusion**
23  Accordingly, **IT IS HEREBY ORDERED** that Defendant Aurora's Motion to Dismiss (#6)
24 is **GRANTED**;
25  **IT IS FURTHER ORDERED** that Defendant Franklin's Joinder in Motion and Motion to
26 Dismiss (#11) is **GRANTED**;

1 **IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction (#14) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court enter **JUDGMENT** for Defendants and against Plaintiff.

DATED this 8th day of July 2010.

                                        Kent J. Dawson
                                        United States District Judge